# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| Alexander Pastene, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Civil Action No.: 0:09-1390-PMD |
| v. | ) ) ) | |
| S.C. Trooper N. L. Sprouse; B.C. Magistrate Nancy D. Sadler; B.C. Sheriff Deputies Michaud, Cooler, and Cregan; Jonathan Brown, | ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) | |

This matter is before the court upon Plaintiff Alexander Pastene's ("Plaintiff") objections to a United States Magistrate Judge's Report and Recommendation ("R&R"), which recommends that this court grant Defendants Sadler, Michaud, Cooler, and Cregan's motion to dismiss, as well as Defendant Brown's motion to dismiss. Having reviewed the entire record, including Plaintiff's objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this order.

## BACKGROUND

As of April 2007, Plaintiff stored some of his belongings, including a 1973 Cadillac Fleetwood Brougham, at AAA Storage City in Ridgeland, South Carolina. In his complaint and objections, Plaintiff alleges that "due to some differences" and "a dispute" between he and Defendant Jonathan Brown, who managed the AAA Storage City, he ended his business relationship with it and opted to store his belongings at another storage facility. While Plaintiff drove the Cadillac to the new storage facility, Defendant N. L. Sprouse, a Beaufort County sheriff's deputy,

initiated a traffic stop and ultimately issued Plaintiff two traffic citations; one for driving a vehicle without tags and one for failure to show proof of insurance. Plaintiff alleges that Officer Sprouse yelled at him during the traffic stop and was "inexplicably oppressive." On January 19, 2007, Plaintiff appeared before Defendant Magistrate Judge Nancy Sadler in regard to his traffic tickets. Plaintiff states that he plead nolo contendere, expecting to have his fines reduced, but "after being the victim of visible contempt and aggression," he moved Judge Sadler to change his plea to not guilty and requested a jury trial. Judge Sadler denied both of his requests. Plaintiff alleges that Magistrate Judge Sadler imposed a higher penalty of $672.50, instead of the $460 stated on the traffic tickets, and suspended his driver's license. Because of the actions of Magistrate Judge Sadler and Defendant Sprouse, Plaintiff alleges he fainted and hit his head against the floor, which caused him to bleed profusely and left a sizable puddle of blood on the floor. After paramedics treated Plaintiff, Defendant Sprouse allegedly verbally attacked Plaintiff by calling him a "jackass" and telling him to "stop milking his wound."

Plaintiff was informed that he had until August 6, 2007 to pay the fines or bench warrants for his arrest would be forwarded to the Beaufort County Sheriff's Office for service. Plaintiff responded by appealing the magistrate court's ruling on August 3, 2007. When Plaintiff failed to pay his traffic fines, the court issued the bench warrants as warned, and Plaintiff alleges that Defendants Michaud, Cooler, and Cregan arrested him on January 4, 2008 in the parking lot of the Hilton Head Library. Plaintiff claims that these three Defendants illegally searched his vehicle, including his laptop, and had the vehicle towed. While traveling to the Beaufort County Detention Center, Plaintiff alleges that Defendant Michaud did not allow him to wear his seatbelt, despite the fact that he "did not make stops at stop signs when he made right turns." Plaintiff further alleges that

Defendant Michaud humiliated Plaintiff by "derogatorily describing him as a Mexican (as in, illegal), whereas, the Plaintiff does not remotely look or speak like a Mexican, but is Caucasian, US Citizen, and of Northern Italian descent." Plaintiff states he was incarcerated for 11 days before he was allowed to contact an acquaintance, who bailed him out of jail by paying his fines for him.

Upon the court's request, Plaintiff clarified that he alleges only state law causes of action against Defendant Sprouse, but that he does allege federal causes of action against Defendants Brown, Sadler, Michaud, Cooler, and Cregan. He alleges a discrimination claim against Defendant Brown, an unlawful arrest claim against Defendant Sadler, and unlawful arrest and search claims against Defendants Michaud, Cooler, and Cregan. After reviewing the parties' motions to dismiss, the Magistrate Judge recommended that the court dismiss Plaintiff's federal causes of action. Plaintiff's objections to this recommendation are before the court.

## STANDARDS OF REVIEW

### I. Magistrate Judge's Report and Recommendation

The Magistrate Judge made her review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R. *Id.*

## II. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

When ruling on motions to dismiss, courts should "read the facts alleged in the complaint in the light most favorable to petitioners," *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989), and the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The court remains mindful that Plaintiff appears before the court *pro se*, and therefore, his pleadings are accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in a pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

## ANALYSIS OF PLAINTIFF'S OBJECTIONS

## I. Defendant Brown

Plaintiff claims that Defendant Brown discriminated against him, and after her review of the record, the Magistrate Judge recommended that the court dismiss Plaintiff's claims against Defendant Brown because, as an employee of AAA Storage City, he was not a person acting under color of state law at the time of the events giving rise to this action. The court agrees. As the Magistrate Judge explained in her R&R, to state a claim pursuant to 42 U.S.C. § 1983, Plaintiff must allege that he was deprived a right secured by the Constitution or laws of the United States by a person acting under color of state law. Although Plaintiff submitted 13 pieces of evidence against

Defendant Brown to support his claim against him, these documents do not prove that Defendant Brown, as the manger of a privately-owned storage facility, was a state actor. While Defendant Brown's attorneys may or may not be graduates of "the school of subterfuge and deception," as Plaintiff contends they are, they correctly assert that Plaintiff's discrimination claim against their client should be dismissed. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful[.]") (internal quotation omitted). Moreover, to the extent Plaintiff alleges a state law breach of contract claim against Defendant Brown, he has not shown that a contract existed between them. Of the 13 exhibits Plaintiff submitted to support his allegations against Defendant Brown, only one was a contract, and it was entered into between Plaintiff and AAA Storage City. Therefore, the court also dismisses Plaintiff's breach of contract claim against Defendant Brown, as AAA Storage City is the appropriate party to assert that allegation against.

## II. **Defendant Magistrate Judge Sadler**

Plaintiff claims that Magistrate Judge Sadler violated his constitutional rights by issuing bench warrants for his arrest after he filed a notice of appeal with respect to her order that he pay a fine for the two traffic offenses he committed. The Magistrate Judge recommended that the court dismiss Plaintiff's claim against Magistrate Judge Sadler because she is entitled to absolute judicial immunity, as Plaintiff has not shown that she acted in the complete absence of all jurisdiction. In his objections, Plaintiff contends that he has shown that Judge Sadler acted without jurisdiction because he filed a notice of appeal with respect to her order three days prior to her issuing the bench warrants. Because his notice of appeal divested the magistrate court of jurisdiction over his case,

Plaintiff contends that Judge Sadler should be held liable for issuing the bench warrants. The court disagrees. Judges are immune from a suit for money damages except when the judge either does not perform a judicial act or when the judge "acted in the clear absence of all jurisdiction." *Mireless v. Waco*, 502 U.S. 9, 11–12 (1991). A judge who acts in excess of jurisdiction, or who makes grave procedural errors, or who acts maliciously or corruptly," does not necessarily act in the clear absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Judge Sadler's issuance of bench warrants were judicial acts, as they were acts normally performed by a judges sitting in a similar judicial capacity. Thus, even if the actions taken by Judge Sadler were erroneous, she is, nonetheless, protected from liability for her acts by the doctrine of judicial immunity. Therefore, the court dismisses Plaintiff's claims against her.

### III.    Defendants Michaud, Cooler, and Cregan

Lastly, Plaintiff alleges that Defendants Michaud, Cooler, and Cregan violated his Fourth Amendment rights by unlawfully arresting him and searching his vehicle. With respect to Plaintiff's claims against these Defendants in their official capacity, the Magistrate Judge recommended that the court dismiss those claims because these Defendants are entitled to sovereign immunity. The Magistrate Judge also recommended that the court dismiss Plaintiff's unlawful arrest claim against these Defendants in their individual capacity because they are entitled to qualified immunity. Plaintiff does not specifically object to these recommendations; therefore, the court adopts them.

Plaintiff does, however, object to the Magistrate Judge's determination that these Defendants are entitled to qualified immunity in their individual capacities with respect to his unlawful search claim. He argues that the Magistrate Judge incorrectly determined that he cannot show that the officers violated a constitutional right by searching his vehicle after arresting him pursuant to the

6

arrest warrant because she applied the incorrect Fourth Amendment framework to analyze the issue. Plaintiff, citing the Supreme Court's recent decision in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), argues that the officers unconstitutionally searched his vehicle because they had already arrested him pursuant to the bench warrants and placed him in the back of a patrol vehicle. A review of the R&R reveals that the Magistrate Judge did in fact analyze Plaintiff's unlawful search claim using case law that has since been altered by the Supreme Court in *Gant*. But, what saves the Magistrate Judge's recommendation, is that the court must assess the Defendants actions in light of the legal rules that were clearly established at the time they searched Plaintiff's vehicle.

The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law. *Pearson v. Callahan*, 129 S. Ct. 808, 823 (2009). As the United States Supreme Court recently noted:

> An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment. This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

*Id.* at 822. When these Defendants allegedly searched Plaintiff's vehicle on January 4, 2008, *Arizona v. Gant*, 129 S. Ct. 1710 (2009) had not been decided. Therefore, on that date, they reasonably believed they could search Petitioner's car as a search incident to a lawful arrest. *See New York v. Belton*, 453 U.S. 454 (1981) (holding that when a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer, as a contemporaneous incident of that arrest, to search the passenger compartment of that vehicle and any containers therein); *see also Arizona v. Gant*, 129 S. Ct. 1710, 1720 (2009) ("*Belton* searches authorize police officers to search not just the passenger compartment but every purse, briefcase, or other container within that space."). Because the unlawfulness of the officers' conduct in this case

7

was not clearly established at the time of the search, Defendants Michaud, Cooler, and Cregan are entitled to qualified immunity. Therefore, the court dismisses Plaintiff's claims against them.

## **CONCLUSION**

Based on the foregoing, the court **GRANTS** Defendant Jonathan Brown's motion to dismiss and **GRANTS** Defendants Sadler, Michaud, Cooler, and Cregan's motion to dismiss. The court **REMANDS** Plaintiff's state law claims against Defendant Sprouse, along with any other remaining state law claims against any of the other Defendants. Because this case will no longer remain on the federal docket, any outstanding motions are rendered **MOOT**, including Defendant Sprouse's request to file a memorandum in support of his motion to dismiss.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**March 30, 2010**
**Charleston, SC**